UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20220-CR-LENARD

UNITED STATES OF AMERICA,

v.

ALI SALEH,

Defendant.

_____/

## PLEA AGREEMENT

The United States of America and Ali Saleh (hereinafter "defendant") enter into the following agreement:

1.      The defendant agrees to plead guilty to Count 1 of the Indictment which charges defendant with Conspiracy to Sell and Distribute a Pre-Retail Medical Product, with a value or $5,000 or greater, that is Abbott Labs Similac infant baby formula, in and using a means and facility of interstate commerce, in violation of Title 18, United States Code, Section 670(a)(5), and Count 4 which charges defendant with Possessing, Transporting and Trafficking in Pre-Retail Medical Products, with a value or $5,000 or greater, that is Mucinex cold medication, that was involved in a violation of of Title 18, United States Code, Section 670(a)(1), in and using a means and facility of interstate commerce, in violation of Title 18, United States Code, Section 670(a)(3). In exchange for defendant's agreement to plead guilty, and for fulfilling all of his other obligations set forth in the plea agreement, and subject to the limitations and provisions set forth in this agreement, the Office of the United States Attorney for the Southern District of Florida (hereinafter "Office"), agrees not to prosecute defendant for any other offenses arising

out of the conduct described in paragraph 16 below.  Furthermore, in exchange for fulfilling all of his other obligations under the Plea Agreement up to and through the time of sentencing, the United States agrees to dismiss Counts 2 and 3 of the Indictment.  This agreement includes only the conduct set forth in paragraph 16 below, and excludes Title 26 offenses, crimes of violence, any other conduct not set forth in paragraph 16 below, and any other proceeding or investigation which may be pending at the time this agreement is signed.  This agreement is also limited to this Office, and as such, does not and cannot bind other federal, state, regulatory, or local prosecuting authorities.

2.    The defendant is aware that the sentence will be imposed by the court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines").  The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered.  The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.  The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence.  Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in

paragraph 1, and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3.      The defendant also understands and acknowledges that the court may impose a statutory maximum term of imprisonment of up to fifteen (15) years each for Count One and Count Four, followed by a term of supervised release of up to three (3) years as to each count. In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $250,000 or double the gross proceeds, and must order restitution as to each count. The defendant agrees that he will make restitution in an amount determined by the Court.

4.      The defendant also agrees that he shall assist the United States in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of all right, title, and interest, regardless of their nature or form, in all assets, including real or personal property, cash or other monetary instruments, wherever located, which the defendant or others to his knowledge have accumulated as a result of the defendant's illegal activities. The defendant further agrees to forfeit to the United States voluntarily and immediately all of his right, title and interest in all funds that, pursuant to Title 18, United States Code, Section 981(a)(1)(C), constitute or are derived from proceeds the defendant obtained, directly or indirectly as a result of the unlawful activity as set forth in Count One, or is property traceable to such property.

5.      The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant as to Count One and as to Count Four. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

6.      The Office reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the

offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, the Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7.      The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. The United States, however, will not be required to make these recommendations if the defendant: (1) fails to fulfill all of his obligations under this plea agreement; (2) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (3) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (4) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8.     The Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed on the count to which the defendant shall plead:

    a.     <u>Applicable Guideline Offense and Base Offense Level</u>:   Pursuant to Section 2B1.1 of the Sentencing Guidelines, the offense guideline applicable to Count One, the base offense level is 6.

    b.     <u>Specific Offense Characteristics</u>:

    The parties agree and stipulate that the following offense characteristics apply:

        1) The offense loss was more than $1 million but not more than $2.5 million, resulting in an increase of sixteen (16) levels under U.S.S.G. § 2B1.1(b)(1)(G);

        2) The offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, resulting in an increase of two (2) levels under U.S.S.G. § 2B1.1(b)(4);

        3) The offense involved conduct described in 18 U.S.C. § 670, for an increase of two (2) levels under U.S.S.G. § 2B1.1(b)(8)(A); and

        4) The offense involved an organized scheme to steal or to receive stolen goods or chattels that are part of a cargo shipment, for an increase of two (2) levels under U.S.S.G. § 2B1.1(b)(14)(B).

9.   The defendant is aware that the sentence has not yet been determined by the court. The  defendant also is aware that any estimate of the probable sentencing range or sentence that

the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

10.    The defendant agrees that he shall cooperate fully with this Office by, among other things: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and (c) if requested by this Office, working in an undercover role under the supervision of, and in compliance with, law enforcement officers and agents.

11.    The Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the court at the time of sentencing. If in the *sole and unreviewable judgment* of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the court's downward departure from *the advisory sentence* calculated under the Sentencing Guidelines, this Office may at or before sentencing make a motion consistent with the intent of Section 5K1.1 of the Sentencing Guidelines prior to

sentencing, or Rule 35 of the Federal Rules of Criminal Procedure subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced from the advisory sentence suggested by the Sentencing Guidelines. The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file any such motion(s) and that this Office's assessment of the nature, value, truthfulness, completeness, and accuracy of the defendant's cooperation shall be binding insofar as the appropriateness of this Office's filing of any such motion is concerned.

12.     The defendant understands and acknowledges that the Court is under no obligation to grant the motion(s) referred to in this agreement should the government exercise its discretion to file any such motion. The defendant also understands and acknowledges that the court is under no obligation to reduce the defendant's sentence because of the defendant's cooperation.

13.     The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, and in exchange for the undertakings made by this Office in this plea agreement, the defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal the conviction, any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect this Office's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if this Office appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released

from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together with this Office, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the conviction or sentence to be imposed in this case was knowing and voluntary.

14.     In the event the defendant withdraws from this agreement prior to or after pleading guilty to the charges identified in paragraph two (2) above or otherwise fails to fully comply with any of the terms of this plea agreement, this Office will be released from its obligations under this agreement, and the defendant agrees and understands that: (a) the defendant thereby waives any protection afforded by any proffer letter agreements between the parties, Section 1B1.8 of the Sentencing Guidelines, Rule 11(f) of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence, and that any statements made by the defendant as part of plea discussions, any debriefings or interviews, or in this agreement, whether made prior to or after the execution of this agreement, will be admissible against the defendant without any limitation in any civil or criminal proceeding brought by the government; and (b) the defendant stipulates to the admissibility and authenticity, in any case brought by the United States in any way related to the facts referred to in this agreement, of any documents provided by the defendant or the defendant's representatives to any state or federal agency and/or this Office.

15.     The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status, if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, and, in some cases, removal is presumptively mandatory. Removal and other immigration consequences are the

subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms the desire to plead guilty regardless of any immigration consequences that the plea may entail, even if the consequence is automatic removal from the United States.

16. The defendant hereby (i) confirms that he has reviewed the following facts with legal counsel, (ii) adopts the following factual summary as his own statement, (iii) agrees that the following facts are true and correct, and (iv) stipulates that the following facts provide a sufficient factual basis for the plea of guilty in this case, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure:

**A.    Conspiracy to Possess, Transport and Traffic Stolen Similac Baby Formula**

On or about November 22, 2012, a tractor-trailer load of Similac Isomil infant baby formula was stolen from a parking facility in Ft. Worth, Texas. The load consisted of 44 pallets, or approximately 6,186 cases.

Subsequently, 1008 cases of the stolen Similac that originated from the theft in Ft. Worth, Texas, were delivered to United Beauty Group, located at 911 NW 209th Ave., Pembroke Pines, Florida, a business controlled by defendant Ali Saleh ("Defendant"). United Beauty Group operated an office and warehouse at this location. Other stolen cargo was later located at the facility, and shipping labels and other documents showed that cargo shipments were destined for entities in New York and elsewhere that were known to be involved in the fraudulent freight forwarding of Similac.

Defendant Ali Saleh received and re-sold the stolen Similac. Defendant also engaged in negotiations with co-defendant Daniel Martinez Zamora ("Zamora") regarding the sale or distribution of the approximately 5,000 remaining cases of Stolen Similac. Saleh did so knowing that the product was stolen and acknowledged that the stolen cases in his warehouse were purchased from Zamora and were subsequently offered for sale by Saleh in and around Miami-Dade County and elsewhere.

The Similac that Defendant received, stored and trafficked, was a pre-retail medical product as defined in Title 18, United States Code, Section 670(e).

9

The shipment of stolen Similac had a wholesale value of approximately $558,741.30.

## B.    Possession, Transporting and Trafficking of Stolen Mucinex

On or about October 20, 2012, while en route to a distribution center in Atlanta, Georgia, an inter-state tractor trailer truck was transporting a load of Mucinex cold medication.  The trailer was stolen from a truck stop in Richland, Mississippi.  The load consisted of approximately 131,000 units of Mucinex that had a retail value of more than $2,000,000 USD.

In September 2013, two independent Confidential Informants (CIs) advised law enforcement that an accomplice of Defendant Saleh was offering to sell in South Florida approximately 18,000 units of stolen Mucinex.  In reality, Defendant Saleh was the source of the supply that was being offered for sale by this accomplice.  The stolen Mucinex that Defendant and his accomplice was offering to sell in South Florida constituted a portion of the tractor-trailer load that had been stolen from Mississippi.  During multiple conversations, Defendant specifically offered to sell, and engaged in negotiations to sell, the stolen Mucinex.  These conversations took place in Miami-Dade and Broward Counties. From the price that was offered and the circumstances of the sale, it was apparent that the product was in fact stolen.  Furthermore, during part of the negotiations, Defendant Saleh showed a CI the computer website of the Food and Drug Administration, that listed the lot numbers from the product that was being discussed as having been reported stolen by the manufacturer.

Subsequently, one of the CIs advised that a co-conspirator had provided the CI and Gutierrez with samples of the stolen Mucinex.  The CI and Defendant had visited a warehouse in Miami-Dade County where several thousand units of stolen Mucinex were stored.  In October 2013, a search warrant was executed at this warehouse, United Beauty Group, resulting in the seizure of approximately 18,192 units of stolen Mucinex.  Defendant and his accomplices offered to sell and engaged in negotiations to purchase and sell, the entire stolen load consisting of approximately 131,000 units.

The Mucinex that Defendant and his accomplices received, stored and trafficked had a wholesale value of approximately $1,788,319.92, and was a pre-retail medical product as defined in Title 18, United States Code, Section 670(e). [1]

17. This Office represents that the undersigned prosecutor is unaware of any information establishing the factual innocence of the defendant in the offenses referred to in paragraph two of this agreement. This Office understands it has a continuing duty to provide such information establishing factual innocence of the defendant. The defendant understands that if this case proceeded to trial, this Office would be required to provide impeachment information relating to any informants or other witnesses. In addition, if the defendant raised an affirmative defense, this Office would be required to provide information in its possession that supports such a defense. Further, if this case proceeded to trial, this Office would be required to provide other information and materials in accordance with Fed. R. Crim. P. 16 and the Southern District of Florida's Standing Discovery Order. In return for the Government's promises set forth in this agreement, the defendant waives the right to receive in discovery any such information and materials other than information and materials establishing the factual innocence of the defendant, and agrees not to attempt to withdraw the guilty plea or to file a collateral attack based on the existence of such information and materials other than information and materials establishing the factual innocence of the defendant.

---

[1] I, Ali Saleh, after having completed plea negotiations and having reached a plea agreement with the United States, hereby affirm that I understand the foregoing and voluntarily and knowingly adopt the Factual Basis set forth in paragraph 18 as my own statement. This statement is intended to be a post-plea discussion statement and is not protected by Criminal Procedure Rule 11(e)(6) or Federal Rule of Evidence 410. No promises or inducements have been made to me other than those contained in this agreement. I am satisfied with the representation of my attorney in this matter. Defendant \_\_\_\_ and Defense Counsel \_\_\_\_

18.     This Office agrees that it will not seek additional upward specific offense characteristics, enhancements, or upward departures to or from the defendant's offense level beyond those, if any, specifically referred to in this agreement, except that this Office shall have the right in its discretion to seek additional upward specific offense characteristics, enhancements, or upward departures to or from the defendant's offense level beyond those, if any, specifically referred to in this agreement where any such additional upward specific offense characteristics, enhancements, or upward departures to or from the defendant's offense level would be based on conduct occurring after the defendant enters into this agreement. The defendant agrees that he will be sentenced under the Sentencing Guidelines and will not seek additional downward specific offense characteristics, reductions, variances, or downward departures to or from the defendant's offense level beyond those, if any, specifically referred to in this agreement.  However, in the event the probation office recommends any specific offense characteristics, enhancements, reductions, or departures to or from the defendant's offense level other than those, if any, specifically referred to in this agreement, either party shall have the right but not the obligation to oppose any such recommendation.

19.     This Plea Agreement between the parties is the entire agreement and understanding between the United States and the defendant.  There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 6/23/14

By: _____
JERROB DUFFY
ASSISTANT UNITED STATES ATTORNEY

12

Date: _June 11, 2014_          By: _____

ANTHONY NATALE, ESQ.
ATTORNEY FOR DEFENDANT

Date: _6/11/14_          By: _____

ALI SALEH
DEFENDANT